Filed 11/6/25  In re A.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | B340070 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 23CCJP02987A–C) |
| Plaintiff and Respondent, | |
| v. | |
| K.C. et al., | |
| Defendants and Appellants. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Conditionally reversed and remanded with directions.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant K.C.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant N.R.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

N.R. (Mother) and K.C. (Father) each appeal from the juvenile court's August 14, 2024 order terminating parental rights to their three minor children. Mother also seeks reversal of the juvenile court's order denying her Welfare and Institutions Code[1] section 388 petition. Joined by Father, Mother's sole contention on appeal is that substantial evidence did not support the juvenile court's finding that the children are not Indian children under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (§ 224 et seq.).

We agree and conclude that a conditional reversal and limited remand are required.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Petition and Detention*

On September 5, 2023, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition pursuant to section 300, subdivision (b)(1), on behalf of four-year-old A.C., one-year-old Am.C., and three-week-old K.C. The petition alleged: K.C. was born with a positive toxicology screen for fentanyl and marijuana.[2] Mother and Father are current abusers of fentanyl and marijuana; Mother also abused drugs during her pregnancy with K.C. Both parents' substance abuse and failure to protect their young children endanger the

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    At birth K.C. was premature and placed in a neonatal intensive care unit (NICU).

physical health and safety of the children and place them at risk of serious physical harm.

The petition includes an "Indian Child Inquiry Attachment"—Judicial Council form ICWA-010(A)—indicating the children's social worker (CSW) inquired about the children's Indian status. The ICWA-010(A) form sets out Mother and Father gave the CSW "no reason to believe" the children are or may be Indian children.

The children were ordered removed from both parents' care and placed with maternal great uncle (MGU) Victor and maternal great aunt (MGA) Norma, where they remained throughout the pendency of the case. MGU Victor and MGA Norma have two daughters, Lily and Wendy,[3] who are the children's maternal aunts (MA).

DCFS's detention report provides that both Mother and Father reported on August 25, 2023 that the children do not have Native American ancestry. On August 31, 2023, MGA Norma and MA Wendy reported they "don't have any Native American ancestry."

On September 5, 2023, Mother and Father each filed a Parental Notification of Indian Status—Judicial Council form ICWA-020. Mother marked the box indicating "None of the above apply" as to the children's possible Indian status. Father's ICWA-020, however, was left mostly blank and incomplete. Father's ICWA-020 did not provide any information as to the children's Indian status, as none of the boxes under "Indian Status" are checked.

---

[3] Throughout the record, Lily and Wendy are sometimes referred to as the children's Tia or maternal aunt or cousin.

3

At the September 6, 2023 detention hearing, the juvenile court detained the children from both parents and ordered monitored visits. As for ICWA, the court found both parents "indicated that they have no Native American Indian ancestry. The court will find that it has no reason to know that these are Indian children." The court "does not order notice to any tribe or the Bureau of Indian Affairs. Parents are to keep [DCFS], their Attorney[s] and the Court aware of any new information relating to possible ICWA status."

II. *First Amended Petition*

On September 20, 2023, the CSW interviewed paternal grandfather (PGF), who "denied knowledge of any Native American ancestry." DCFS declined to place the children with PGF due to his criminal history of robbery and domestic violence. On September 22, 2023, Father informed the CSW that he has four sisters—paternal aunts (PA) Beige, Aires, Rashunda—and an older brother.[4] Father has not seen paternal grandmother (PGM) in three to four years. Maternal grandmother (MGM) died when Mother was 11 or 12 years old.

On October 3, 2023, DCFS filed a first amended petition, adding allegations of a history of domestic violence between the parents in the presence of the children, endangering their physical health and safety.

---

[4] The record includes no further information on Father's brother and one of his sisters.

4

III. *Jurisdiction and Disposition*

Adjudication occurred on October 18, 2023. The juvenile court sustained the first amended petition as pleaded. The court declared the children dependents of the court, ordered removal from both parents, and ordered reunification services. The court also ordered monitored visitation for the parents at any DCFS-approved location.

Several family members were approved by DCFS as visitation monitors, including PAs Rashunda, Beige, and Aires, as well as maternal grandfather (MGF).

IV. *ICWA Investigation*

On January 11, 2024, PA Rashunda reported there was Cherokee and Creole ancestry on her mother's side.[5] PA Rashunda has "no contact" with PGM. The CSW asked if anyone in her family has ever been registered with or received money from a federally-recognized tribe or lived on reservation land, and PA Rashunda reported no. The CSW asked whether anyone in her family ever received a certificate stating enrollment in a tribe, and PA Rashunda reported no.

In a status review report filed March 19, 2024, DCFS informed the court that the CSW contacted Mother and Father via text message on March 15, 2024, asking whether they had Native American ancestry, but neither replied. On March 17, 2024, Mother text messaged the CSW, stating, "No I do not have any Native American ancestry."

---

[5] PA Rashunda confirmed that she and Father "have the same mother."

5

On March 18, 2024, DCFS sent a "Notice of Child Custody Proceeding for Indian Child"—Judicial Council form ICWA-030—to the Cherokee tribes[6] for each of the three children.

The ICWA-030 notices for one-year-old Am.C. and four-year-old A.C. included the following information: 1) Mother's name, birthdate, current and former address; 2) Father's name and current address; 3) MGF's name; 4) PGF's name; and 5) PA Rashunda's name, birthdate, and current address. The notice stated "UNKNOWN" as to Mother's birthplace; Father's birthdate, birthplace, and former address; MGM's name and any identifying information; PGM's name and any identifying information; MGF's birthdate, birthplace, current and former address; PGF's birthdate, birthplace, current and former address; and PA Rashunda's birthplace.

The ICWA-030 notice for seven-month-old K.C. included 1) Mother's name, birthdate, current and former address; 2) Father's name, birthdate, current and former address; 3) MGF's name; 4) PGF's name; and 5) PA Rashunda's name, birthdate, and current address. The notice stated "UNKNOWN" as to Mother's birthplace; Father's birthplace; MGM's name and any identifying information; PGM's name and any identifying information; MGF's birthdate, birthplace, current and former address; PGF's birthdate, birthplace, current and former address; and PA Rashunda's birthplace.

In all three ICWA-030 notices, no information was provided for "Other Lineal Biological Ancestors" and only PA Rashunda's

---

[6]     The three Cherokee tribes include the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma.

information was included where it requests information for "aunts, uncles, siblings, first and second cousins, etc."

V. ***Section 366.21 Status Review Proceeding***

At the six-month review hearing held April 17, 2024, the juvenile court found the children's placement with caretakers MGA Norma and MGU Victor necessary and ordered DCFS to complete the steps to finalize permanent placement. The court terminated reunification services for both parents and set the matter for a section 366.26 hearing to select and implement a permanent plan of adoption.

With respect to ICWA, the juvenile court found: "The court has reviewed the status review [report] and reviewed the section about updated inquiry. The court was informed by paternal aunt, [Rashunda] that there may be Cherokee and Creole heritage. [¶] The social worker had sent notices to the Cherokee tribes on behalf of the children. The court is not aware whether Creole is a federally recognized tribe.[7] I don't believe it is. But notwithstanding that, the Department has complied with its ongoing obligation to conduct inquiry. [¶] At this time, the court continues to find that these children are not Indian children as that term is defined in [ICWA]." The court ordered DCFS to "follow up on responses from the Cherokee tribe and also do its research to determine whether Creole is a federally recognized

_____

[7] ICWA applies only to federally recognized tribes, and "Creole" is not a federally recognized Indian tribe (*In re John V.* (1992) 5 Cal.App.4th 1202, 1217) and is not listed as an Indian Tribal Entity recognized by and eligible to receive services from the United States Bureau of Indian Affairs (84 Fed.Reg. 1200 (Feb. 1, 2019).)

7

tribe or any bands of any other tribes and conduct inquiry and notice as appropriate." The juvenile court ordered DCFS to "re-send [ICWA] notices to any Indian tribes which [the court] just discussed."

## VI. *Continued ICWA Investigation*

On May 31, 2024, the CSW asked Mother if she has any Native American heritage. Mother replied, " 'No, my parents are from Mexico.' " On June 7, 2024, MGU Victor told the CSW he does not have Native American heritage and said his niece (Mother) "does not have any Native American Indian ancestry or Alaskan Native heritage as her mother [MGM] was born and raised in Mexico." That same date, the CSW also met with MGA Norma, who denied Indian heritage and reported she was born and raised in Oaxaca, Mexico.

Via its section 366.26 report, DCFS informed the juvenile court that the Creole tribe is not a federally recognized tribe. DCFS also informed the court that it received letters from the three tribes, indicating that the children are "not registered nor eligible to register as members of these tribes."

The letter from the United Keetoowah Band of Cherokee Indians provides that they were unable to establish heritage "[b]ased on the information that has been provided" and that "if any additional information becomes available which might help in establishing Keetoowah ancestry, [to] please forward the information . . . so that a further determination can be made." The letter from the Eastern Band of Cherokee Indians provides that their "determination is based on the information exactly as provided by [DCFS]" and that "[a]ny incorrect or omitted family documentation could invalidate this determination." Similarly,

the letter from the Cherokee Nation states that "[a]ny incorrect or omitted information could invalidate th[eir] determination."

## VII. *Section 388 Petition and Section 366.26 Permanency Planning Proceeding*

On August 13, 2024, Mother filed a section 388 petition, requesting the court to vacate its scheduled section 366.26 hearing and reinstate reunification services for six months.

At the hearing held August 14, 2024, the juvenile court summarily denied Mother's section 388 petition. It then proceeded to hold the section 366.26 hearing, where it terminated Mother's and Father's parental rights, ordered adoption as the permanent plan for all three minors, and designated MGA Norma and MGU Victor as the prospective adoptive parents.

Mother and Father each filed a timely notice of appeal.

## DISCUSSION

## I. *Applicable Law*

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128–1129 (*Dezi C.*), quoting 25 U.S.C. § 1902.) Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a), (b) [incorporating federal definitions].)

9

The juvenile court and DCFS are charged with "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) The duty to inquire whether a child is an Indian child begins with the initial contact, i.e., when the referring party reports child abuse or neglect that triggers DCFS's investigation. (§ 224.2, subd. (b)(1), (2).) DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.*, subd. (b)(2).) Extended family members include "a person who has reached 18 years of age and who is [the child's] grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1); 25 U.S.C. § 1903(2).)

"When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.) There is "reason to believe" a child involved in a proceeding is an Indian child whenever the court or social worker "has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).) Further inquiry may be conducted by, among other things, interviewing the parents and extended family members, and contacting any tribe that may reasonably be expected to have information about the child's membership, citizen status, or eligibility. (*Id.*, subd. (e)(2).)

If the inquiry establishes a "reason to know" an Indian child is involved, notice of the proceedings must be provided to the pertinent tribes. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1133; *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1079.) There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).) Thereafter, the court shall confirm that DCFS used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership. (*Id.*, subd. (g).) A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe "shall be conclusive." (*Id.*, subd. (h).)

If, instead, the juvenile court finds no reason to know the child is an Indian child and finds "that an agency's inquiry and due diligence were 'proper and adequate,' " the court may make a finding that ICWA does not apply. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134, quoting § 224.2, subd. (i)(2).) A court may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a[n] . . . inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408 (*Josiah T.*).)

## II.   *Standard of Review*

We review the juvenile court's ICWA findings for substantial evidence. (*Josiah T.*, *supra*, 71 Cal.App.5th at p. 401;

11

*In re S.R.* (2021) 64 Cal.App.5th 303, 312; *Dezi C., supra,* 16 Cal.5th at p. 1134 ["The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' "].)  If our review reveals error resulting in in inadequate initial ICWA inquiry, then we must order "conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court], rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.*, at p. 1136.)

III.  ***Substantial Evidence Did Not Support the Juvenile Court's ICWA Finding, Warranting Conditional Reversal***

Mother, joined by Father, argues that DCFS did not report as to any inquiries made to available paternal relatives to ascertain PGM's name, birthdate, place of birth, former or current address, or any other relevant information.  The parents further argue the ICWA notices sent to the Cherokee tribes were "glaringly deficient in information" and incomplete.  DCFS disagrees and argues, first, that DCFS and the juvenile court conducted an adequate initial inquiry, and second, that any error with the ICWA notices was harmless.

We agree with Mother and Father and disagree with DCFS.

It is undisputed that Mother completed and signed an ICWA-020 form in which she indicated none of the above apply as to the children's possible Indian status.  It is also undisputed that Mother told DCFS at least three different times—on August 25, 2023, September 5, 2023, and May 31, 2024—that she has no Native American heritage.  However, Mother having denied

12

Indian ancestry does not dispense with section 224.2, subdivision (b)'s requirement that DCFS, as part of its initial inquiry, inquire of a child's extended family members regarding possible Indian ancestry. (See, e.g., *In re Antonio R.* (2022) 76 Cal.App.5th 421, 426 [although mother reported she had no Indian ancestry, juvenile court erred by concluding DCFS had conducted adequate ICWA inquiry because DCFS failed to inquire of the maternal grandmother, maternal aunts, and a maternal uncle about the child's possible Indian ancestry]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [juvenile court erred by terminating parental rights; although mother denied Indian ancestry, DCFS had a duty to inquire of the maternal great-grandmother and maternal great-grandfather].)

On August 31, 2023, MGA Norma and MA Wendy reported they "don't have any Native American ancestry." On June 7, 2024, MGU Victor denied any Indian heritage. But, there is no record or documentation of DCFS having inquired from MGF as to possible Indian ancestry, despite the fact that DCFS continued to stay in contact with MGF, who was an approved monitor for visitation. DCFS's duty to inquire requires asking the children's extended family members, including their grandparents, whether the children are or may be Indian children. (See § 224.1, subd. (c)(1) [extended family members must have "reached 18 years of age" and include the child's "grandparents"].) This, in and of itself, demonstrates DCFS did not adequately comply with initial inquiry requirements as to possible Indian ancestry of the minor children.

As for Father, his ICWA-020 form filed on September 5, 2023 was left mostly blank, with no information as to the

children's Indian status. Despite this, the juvenile court[8] found at the September 6, 2023 detention hearing that both parents "indicated that they have no Native American Indian ancestry."

On January 11, 2024, PA Rashunda reported there was Cherokee ancestry on her mother's side. PA Rashunda confirmed she and Father share the same mother—PGM. Given these facts, a further inquiry was required. (See *In re. E.C.* (2022) 85 Cal.App.5th 123, 147 [report of possible Native American ancestry is "insufficient to trigger the duty of further inquiry"]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 [noting "reality that parents may not know their possible relationship with or connection to an Indian tribe" and explaining the fact that a parent "disclaimed any Indian ancestry at the outset of the dependency proceedings did not end the . . . duty of inquiry, especially where relevant contact and identifying information was readily available"].)

Father stated he has not seen PGM in three to four years and PA Rashunda stated she has no contact with PGM. DCFS left it at that and did not ask Father or PA Rashunda any questions requesting biographical information for PGM or any way to contact PGM. In addition, the record does not disclose that inquiry was made of any *other* paternal relatives as to PGM.

---

[8] The juvenile court must make an ICWA inquiry when the parents first appear in court and "shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, and Indian Child, whether they know or have reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and must require each party to complete the ICWA-020 form—"Parental Notification of Indian Status" (Cal. Rules of Court, rule 5.481(a)(2)(C)).

DCFS must make "a meaningful effort to contact specified family members who might have pertinent information." (*In re K.R.* (2018) 20 Cal.App.5th 701, 707.)  Not once did DCFS ask PGF, PA Beige, or PA Aires any questions to ascertain whether they know of PGM's possible Cherokee heritage; DCFS also did not ask anyone for PGM's name, her birthdate and place of birth, former or current address, or any identifying information.  DCFS's inquiry "must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*In re K.H.* (2022) 84 Cal.App.5th 566, 604.)  No documentation or information in the record demonstrates DCFS's efforts to locate or interview PGM.  (*In re K.R.* at p. 709 ["a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status"]; see *In re Michael V.* (2016) 3 Cal.App.5th 225, 235–236.)

Finally, Mother and Father argue the ICWA notices DCFS served on the three Cherokee tribes were deficient because they lacked adequate information.  As noted above, the notices lacked a variety of information which was known or readily available to DCFS, including Mother's place of birth (Long Beach, CA), Father's date of birth (August 12, 1997), birthplace, and former address (in Long Beach).  The notice also specified as "UNKNOWN" for MGM's name and any identifying information; PGM's name and any identifying information; MGF's birthdate, birthplace, current and former address; PGF's birthdate, birthplace, current and former address; and PA Rashunda's birthplace.  There was also no mention of MAs Lily or Wendy, or PAs Beige or Aires in the notices.  All of the requested

15

information pertaining to Father, his siblings, and his parents may have been uncovered had there been a more robust inquiry.

Most significantly, the relative identified as having Cherokee ancestry is PGM, yet PGM's name, birthdate, or any information at all about her was not included on any of the notices sent to the Cherokee tribes. Greater diligence should have been exercised by DCFS in trying to obtain pertinent information from the children's parents and extended relatives Under these circumstances, where the notices were preceded by an inadequate investigation and lacked potentially relevant information, the notices themselves do not suffice to discharge the duty to inquire into the minors' possible Native American heritage.

Substantial evidence does not support the juvenile court's finding that ICWA did not apply. The juvenile court ultimately accepted DCFS's incomplete inquiry. (§ 224.2, subd. (b); see *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 555 [juvenile court had a duty "to ensure the Department adequately investigated the children's possible Indian ancestry through [Father's] side of the family"].) Here, the juvenile court erred in failing to ensure DCFS had satisfied its duty of inquiry before finding ICWA did not apply to the proceedings. (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 320.) *In re K.R.* is instructive. There the reviewing court found that the juvenile court did "not inquire as to what efforts [DCFS] had made to contact the paternal grandfather or the paternal great-grandparents" and accordingly found that the juvenile court "failed in its duty to ensure compliance with ICWA." (*In re K.R.*, *supra*, 20 Cal.App.5th at p. 709.) Similarly, here, the juvenile court should have followed up with DCFS as to its efforts regarding PGM's, and therefore the children's, possible Cherokee

16

heritage. "[T]he court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*Ibid.*)

We conditionally reverse the juvenile court's orders and remand for compliance with ICWA and related California law.

## DISPOSITION

The August 14, 2024 orders denying the section 388 petition and terminating parental rights are conditionally reversed. The matter is remanded for the limited purpose of complying with the inquiry and notice provisions of ICWA and its California implementing provisions. If the juvenile court thereafter finds a further inquiry was proper and adequate, finds due diligence has been conducted, and concludes that ICWA does not apply, it shall reinstate its August 14, 2024 orders. If the juvenile court concludes ICWA does apply, then it shall vacate the underlying orders and proceed in conformity with ICWA and related California law. (25 U.S.C., § 1912, subd. (a); §§ 224.2, subd. (i)(1), 224.3 & 224.4.)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.                    VIRAMONTES, J.

17